FARMERS' BANK & TRUST COMPANY *v.* FARMERS' STATE
BANK OF BROOKPORT.

Opinion delivered May 23, 1921.

BANKS AND BANKING—FORGED CHECKS—LIABILITY.—Where plaintiff bank issued its cashier's check to a customer and mailed it to him, and it was presented to defendant bank by a third person of the same name who represented himself to be the payee, and forged the payee's name, and received a part of the funds called for, leaving the rest on deposit, and defendant bank indorsed the check with a guaranty of prior indorsements, and transmitted it to plaintiff bank for payment, which was made, plaintiff bank, after discovery of the forgery, could recover from defendant bank the amount so paid.

Appeal from Mississippi Circuit Court, Chickasawba District; *R. H. Dudley,* Judge; affirmed.

*Davis, Costen & Harrison,* for appellant.

The only question we desire to present is, Can a bank which pays a check drawn upon itself, the indorsement upon which is forged, recover the amount paid from the bank which originally cashed the check? The trial court rested its judgment upon the theory that defendant bank was negligent in not requiring the indorser to be identified. Under the agreed facts an attempt at identification would have been futile. Neely was a stranger in Blytheville, and there was no one to whom appellant could apply for identification.

Appellant was not guilty of any negligence. The correct rule is laid down in 168 N. C. 605. A bank which pays a check upon itself, the signature of the drawer and indorser upon which are forged, can not recover the amount paid the bank which originally cashed the check, although it indorsed thereon, "All prior indorsements guaranteed." L. R. A. 1915, p. 1138; 85 S. E. 5; 10 Vt. 141; 33 Am. Dec. 188. The rule of North Carolina court is recognized in 73 Ark. 561-566. The court erred in refusing defendant's declarations of law, Nos. 1, 2 and 3, and in finding for plaintiff, as defendant was not liable.

*W. D. Gravette,* for appellee.

Had appellee known and recognized the forgery, appellant would be in the same position it is now on account of the fact that the money had been paid to this forger at the time the check was presented and before appellee had time or opportunity to see or examine the forgery. All the harm had been done before the check came into possession of the appellee bank. Appellee bank was not required, on account of the payee having once been a customer of said bank, to know whether the payee's name was forged or genuine, in the face of the indorsement of appellant bank's guaranty that all prior indorsements were guaranteed. 152

Ill. 296; 43 Am. St. Rep. 454.  Plaintiff had a right to rely on the bank's guaranty that all prior indorsements were genuine.  88 Tenn. 299; 17 Am. St. Rep. 884.  See, also, 159 Ky. 141; 166 S. W. 986; 137 Ark. 251.  The findings and declarations of law were amply justified by the court below.  Magee on Banks, etc., 352; Michie on Banks, 1090-3 and 1190; 151 Mass. 280; 5 Cal. 124; 98 Ark. 1.

WOOD, J.   This cause was submitted to the trial court sitting as a jury upon an agreed statement of facts, as follows:

On or about December 1, 1919, J. W. Neely, a former citizen and resident of Brookport, Illinois, and a patron of the Farmers' State Bank, the plaintiff herein, emigrated to Arkansas, and located near Blytheville, his correct postoffice address being Blytheville, Arkansas, R. F. D. No. 1.  Before leaving Illinois, he had disposed of some property there, and on the 4th day of December, 1919, the plaintiff bank issued its cashier's check payable to J. W. Neely for the sum of $540.85, which was put in the mail properly addressed to him at Blytheville, Arkansas, R. F. D. No. 1.  The check never reached the person for whom it was intended, but was presented to defendant bank between the 4th and 13th of December, 1919, by a person, a negro, who represented himself to be J. W. Neely, and who indorsed the name "J. W. Neely" upon said check, without the consent or authority of the person for whom said check was intended.

The person presenting said check received from the defendant bank the sum of $140.85 in cash and left the balance of $400 on deposit in said bank to the credit of J. W. Neely.  After receiving said check as above, the defendant bank indorsed said check on the back as follows:  "Pay to the order of any bank, banker or trust company, all prior indorsements guaranteed.

"Farmers' Bank & Trust Company,

"Blytheville, Arkansas.

"H. E. Barnett, Cashier."

Defendant bank then transmitted same to plaintiff bank for payment, which was made on December 13, 1919. Upon learning that said check had not reached the hands for which it was intended, the defendant bank paid over the $400 left on deposit to plaintiff bank, but refused to pay over the sum of $140.85, the amount paid upon presentation of said check. and this suit is by plaintiff bank to recover that sum.

It is further agreed that, upon receipt of information that the party for whom the said check was intended had never received same, plaintiff bank immediately wrote defendant bank, advising it that said indorsement was a forgery, but that said letter was not received by defendant bank, and that plaintiff bank had paid to the person who purchased said cashier's check the amount represented thereby.

The finding and judgment of the court was in favor of the appellee, from which is this appeal.

Learned counsel for appellant rely upon the case of *State Bank* v. *Cumberland Savings & Trust Company,* 85 S. E. (N. C.) 5, L. R. A. 1915 D, p. 1138; *Bank of St. Albans* v. *Farmers' & Mechanics' Bank,* 10 Vt. 141; 33 Am. Dec. 188.

The first of the above cases is comparatively recent, the opinion having been rendered by the Supreme Court of North Carolina in 1915. The facts and the law announced as applicable thereto reported in the syllabus to that case in 85 S. E. 5, are as follows: "Plaintiff bank, which, in the course of business, received through another bank a check purporting to be drawn on it and indorsed by a third person, whose signatures were both forged, and which had been cashed by defendant bank, in reliance upon the indorsement "all prior indorsements guaranteed" and the custom to take such checks relying upon the exercise of due diligence on the part of the bank first cashing it, could not recover the amount paid on the forged check, as it should know the signature of the drawer, its own depositor."

This doctrine has no application to the facts of this record. Here its cashier's check made the appellee both the drawer and the drawee. In this case the drawee was not required to know the signatures of the indorsers. To apply the doctrine of *State Bank* v. *Cumberland Savings & Trust Co., supra,* to the facts of this record would be to ignore a wholesome principle of natural justice and equity which has also been thoroughly established as a rule of law, towit: That, as between two innocent parties to a transaction which must result in financial loss, the loss must fall upon that one whose acts contributed most to produce it. The principle is well expressed in the case of *Danvers Bank* v. *Salem Bank,* 151 Mass. 280, as follows: ''Where a loss which must be borne by one of two parties alike innocent of the forgery can be traced to the neglect or fault of either, it is reasonable that it should be borne by him, even if innocent of any intentional fraud, through whose means it has succeeded. To entitle the holder to retain money obtained by a forgery, he should be able to maintain that the whole responsibility of determining the validity of the signature was placed upon the drawee, and that the vigilance of the drawee was not lessened, and that he was not lulled into a false security by any disregard of duty on his own part, or by the failure of any precautions which from his implied assertion in presenting the check as a sufficient voucher the drawee had a right to believe he had taken. * * * When this check was forwarded by the defendant for redemption, the plaintiff was without the means it would have had if it had been presented at its own counter of ascertaining the character of the person offering it. It had a right to believe that the defendant, in cashing a check purporting to be drawn by one not its own customer or entitled to draw upon it, had by the usual and proper investigation satisfied itself of its authenticity. The indorsement, which was not necessary to the transfer of the check, was a guaranty of the signature of the drawer, and the plaintiff had a right to

believe that the indorser was known to the defendant by proper inquiry." See, also, *People's Bank* v. *Franklin Bank,* 88 Tenn. 299; 17 Am. St. Rep. 84; *Farmers' National Bank of Augusta* v. *Farmers' & Traders' Bank of Maysville,* 159 Ky. 141; *Cureton* v. *Farmers' State Bank.* 147 Ark. 312.

The rule invoked by appellant is an exception to the rule that money which has been paid through a mistake can generally be recovered. This exception is mentioned by Judge RIDDICK, speaking for the court, in *LaFayette* v. *Merchants' Bank,* 73 Ark. 561-66. This exceptional rule, however, as held in the case of *Farmers' National Bank of Augusta* v. *Farmers' & Traders' Bank of Maysville, supra,* does not "require the drawee bank to know the signature of an indorser. That burden is upon the holder, who is bound to know that the previous indorsements, including that of the payee, are in the handwriting of the parties whose names appear upon the check, or were duly authorized by them." In *First National Bank* v. *Northwestern National Bank,* 152 Ill. 296, it is held (quoting syllabus): "A bank indorsing and collecting a check warrants the genuineness of all pre-existing indorsements thereon, including the indorsements of the respective payees named in such check, and is answerable for moneys received by it if any such indorsements are forgeries."

In the case of *Schaap* v. *State National Bank of Texarkana,* 137 Ark. 251, we said: "In other words, the true owner of a check, with a forged or unauthorized indorsement, may ratify the act of a bank in receiving it in that condition, and collecting the proceeds or paying them out without authority, and yet not ratify the forged or unauthorized indorsement. In such cases the bank can not avoid liability by showing that its conduct was governed by good faith, and the payee is entitled to recover unless he has been guilty of fraud or negligence in the matter."

The facts of this record show that the appellee was not guilty of any fraud; and if it could be said to be in the least negligent, its negligence in a measure was superinduced by the indorsement of the appellant, which was calculated to lull the appellee into a sense of security in reliance upon such indorsement and thereby lessen the diligence which it doubtless otherwise would have exercised. It follows that the rulings of the circuit court are in all things correct, and its judgment is therefore affirmed.