446 P.2d 303

PACIFIC METALS COMPANY, DIVISION OF A. M. CASTLE & COMPANY, a corporation, Plaintiff, Respondent and Cross-Appellant,

v.

TRACY–COLLINS BANK AND TRUST COMPANY, a corporation, Defendant, Third-Party Plaintiff and Appellant.

BANK OF SALT LAKE, Defendant, Cross-Plaintiff and Respondent,

v.

TRACY–COLLINS BANK AND TRUST COMPANY, a corporation, Cross-Defendant, Third-Party Plaintiff and Appellant,

v.

OLYMPUS HEATING AND AIR CONDITIONING, INC., a corporation, Third-Party Defendant.

No. 11083.

Supreme Court of Utah.

Oct. 22, 1968.

Fred L. Finlinson, L. Delos Daines, Salt Lake City, for appellant.

Jay A. Meservy, of Greenwood & Meservy, Salt Lake City for Pacific Metals Co.

D. Gary Christian, Salt Lake City, for Bank of Salt Lake.

CROCKETT, Chief Justice.

Plaintiff Pacific Metals Company sued defendants Tracy-Collins Bank and Trust Company and Bank of Salt Lake for conversion of a check for $5,321.70, which was made out to plaintiff and Olympus Heating and Air Conditioning, Inc., as joint payees, and which was honored by defendant banks upon the endorsement of Olympus, but without the endorsement of plaintiff.

Mayne Plumbing and Heating Company had a contract to make an installation in East High School in Salt Lake City. Olympus, a subcontractor, was indebted to its supplier, Pacific Metals. In order to assure the supplier that it would get its money, Olympus arranged that the general contractor Mayne would issue checks payable jointly to itself and to Pacific Metals. Thence forward the practice was followed of issuing the checks in that form, both payees endorsed the checks, and divided the proceeds according to their respective interests therein. The check in question was issued in that form on 18 October, 1965, by Mayne Plumbing Company to Olympus Heating and Pacific Metals as joint payees. But it was endorsed only by Olympus and was deposited with defendant Tracy-Collins, who credited Olympus's account and proceeded to disburse funds on its order. Tracy-Collins endorsed the check, "Pay Any Bank, P.E.G." [Prior Endorsement Guaranteed] and forwarded it to the drawee, Bank of Salt Lake, who charged Mayne's account and made payment to Tracy-Collins.

Plaintiff Pacific Metals, having neither endorsed the check nor received any of the funds therefrom, brought this suit against both of the defendant banks; and Tracy-Collins filed a cross-complaint against the Bank of Salt Lake for honoring the check without plaintiff's endorsement. Upon reciprocal motions for summary judgment, the trial court ruled in favor of plaintiff Pacific Metals against Tracy-Collins, but refused to allow it to recover against the Bank of Salt Lake; and also refused to allow Tracy-Collins' recovery against Bank of Salt Lake on its cross-complaint. Each party appeals or cross-appeals from the ruling adverse to it.

In order to avoid liability to plaintiff Pacific Metals, Tracy-Collins contends that the general contractor, Mayne Plumbing, included Pacific Metals as a joint payee on the check only as an act of courtesy for which it is not shown that any consideration was given, and that consequently Pacific Metals has no interest herein upon which to base its claim for recovery. The contention is without merit. The law does not require a joint payee in the position of Pacific Metals to show that it gave consideration for becoming payee of a check. It may have been so named for any number of reasons: e. g., it could represent his interest as a third-party beneficiary, or as the donee of a gift. In any event, it is the

maker's exclusive privilege to designate the payees of his checks; and it is not the prerogative of one who accepts and pays it to question whether the maker had sufficient reason for doing so. However, in accepting the check, it is his duty to comply with the direction of the maker to "pay to the order of" the named payees. It is elementary negotiable instruments law that in order to fulfill that requirement all payees must endorse.[1] Inasmuch as Tracy-Collins cashed the check (credited the account) of Olympus without the endorsement of the plaintiff Pacific Metals, the trial court was correct in rendering judgment for the plaintiff against Tracy-Collins.

■■ For reasons similar to those we have just discussed, the drawee of the check, the Bank of Salt Lake, was likewise not entitled to pay the check without the endorsement of the copayee, plaintiff Pacific Metals. The nature of a check is an order by its maker to his banker or depository that the face amount be paid to the payees he designates, and it is notice to anyone accepting the check that the signatures of all payees are required. This require-

ment is just as binding on the drawee bank as upon anyone else. Examples of cases which well illustrate this principle are Crahe v. Mercantile Trust & Sav. Bank,[2] and Midland Sav. & Loan Co. v. Tradesmen's Nat'l Bank of Okla. City.[3] Consistent with that reasoning and in harmony with our view of the law, the defendant, Bank of Salt Lake, having failed to obtain the endorsement of both payees is likewise liable to Pacific Metals on the check, but the plaintiff, of course, is limited to one recovery of its money.

In the other aspect of this appeal Tracy-Collins seeks to overturn the ruling that it was not entitled to prevail on its cross-complaint against the Bank of Salt Lake. Its position on this claim proceeds thus: even if it be held liable to the plaintiff Pacific Metals for paying the check without the latter's endorsement, the drawee Bank of Salt Lake should have immediately refused to honor the check and so notify Tracy's; that if it had done so, Tracy's would not have paid out the money on Olympus's account, and thus would not have suffered loss.

1. The Negotiable Instruments Law was then in effect. Sec. 44–1–42, U.C.A.1953 provided "Where an instrument is payable to the order of two or more payees or endorsees who are not partners, all must endorse * * *."; now replaced by Uniform Commercial Code, Chap. 154, S.L.U. 1965, effective January 1, 1966. Sec. 70A–3–116 retains this provision in substance.

2. 295 Ill. 375, 129 N.E. 120, 12 A.L.R. 92, reversing 218 Ill.App. 497.

3. 57 F.2d 686 (CCA 10th); that the above mentioned cases are in accord with the weight of authority, see 12 A.L.R. 92, et seq.; 27 Ill.L.Rev. 564; contra, see Elwert v. Pacific First Fed. Sav. & Loan Assn., 138 F.Supp. 395, 406.

We are not very much impressed with the equity of Tracy's position thus essayed: that even though it committed a wrong in cashing the check, it was the responsibility of the drawee Bank of Salt Lake to promptly refuse to pay the check and warn Tracy so it could save itself from loss. It is a general principle that one who commits a wrong must take the consequences and cannot complain that someone else doesn't rescue him therefrom. It is noteworthy here that when the check was deposited with Tracy-Collins, it made funds available for immediate withdrawal upon Olympus's order. It is thus plain that the acceptance of the check by the Bank of Salt Lake, which occurred later, could have had no causative effect in inducing Tracy-Collins to accept the check and incur loss, which would justify imposing liability upon it.[4] The extent of the duty the Bank of Salt Lake owed Tracy-Collins was to request within a reasonable time that it make good on its endorsement; and it was the duty of Tracy-Collins to do so.

The responsibility of Tracy-Collins as guarantor of the check as to its transferee was fixed when it placed its unqualified endorsement on the check. This conclusion is not dependent upon, but is emphasized by the addition to the endorsement of the letters: "P.E.G." which, according to custom among bankers, means "Prior Endorsements Guaranteed." This is also conformable to the import of Sections 44–1–66 and 67, U.C.A.1953,[5] which were in effect at the time of this transaction; and this is true, whatever may be thought of the status of the Bank of Salt Lake in regard to being a holder in due course.[6] The practical exigencies attendant upon the large volume of commercial paper passing through the channels of modern commerce in an orderly manner make it essential that one who accepts be able to look to prior endorsers as guarantors. This is affirmed by numerous well-considered cases which have dealt with the problem here involved and have allowed a drawee bank in the position of Bank of Salt Lake to recover from a prior endorsing bank, even though there was missing an endorsement of a payee.[7]

4. See United States Fidelity & Gty. Co. v. Peoples Natl. Bank, 24 Ill.App.2d 275, 164 N.E.2d 497.

5. Sec. 44–1–67, U.C.A.1953, now replaced by Sec. 70A–3–417(2) (b), U.C.A. (Supp. 1967).

6. That this is the reasonable application of the language in Sec. 44–1–67, which refers to "holders in due course," see Brannan's Negotiable Instruments Law—Beutel, 6th Ed., 1938, p. 815.

7. See American Natl. Bank v. First Natl. Bank, 130 Colo. 557, 277 P.2d 951; United States Fidelity & Gty. Co. v. Peoples Natl. Bank, 24 Ill.App.2d 275, 164 N.E. 2d 497 and Roswell Bank v. Citizens and Southern DeKalb Bank, 104 Ga.App. 291, 121 S.E.2d 706. See statement in Security Trust & Sav. Bank v. Federal Reserve Bank of Minneapolis, 269 F.Supp. 893, 896 (1967).

Remanded for judgment in accordance with this opinion. Appellant Tracy-Collins Bank and Trust Company to pay costs to plaintiff Pacific Metals and to cross-plaintiff, Bank of Salt Lake.

TUCKETT and ELLETT, JJ., concur.

CALLISTER, Justice (dissenting).

I dissent from solely one aspect of the majority opinion, namely, the section thereof that states that the "Bank of Salt Lake, having failed to obtain the endorsement of both payees is likewise liable to Pacific Metals on the check."

There are two alternative remedies presented to a payee, when a check is cashed without his endorsement.

* * * Since the check was never delivered to the payee and was not negotiated by him, it could not be legally binding and thus the debt owed by the drawer to the payee continues outstanding. The drawer can demand that the drawee credit his account and the drawee in turn can demand that the collecting bank reimburse it. See American National Bank of Denver v. First National Bank, 130 Colo. 557, 277 P.2d 951. The payee has another remedy. He can sue the collecting bank directly. The legal effect of his doing this constitutes adoption and ratification of the collection and payment of the check (notwithstanding that it was not endorsed). (We consider the legal consequence of no endorsement to be the same as a forgery, at least for the present purpose. See American National Bank v. First National Bank, supra.) [1]

The rationale of the foregoing principle is as follows: The plaintiff, payee, may ratify the collection of the check for him; in such case he ratifies the assumed payment of it, and the check is then paid; the drawee bank and the maker thereof are both released from paying it over again; the payee would be estopped from making such claim. The ratification is not upon the acceptance alone of the check by the drawee bank, but upon its collection by the "cashing" bank and payment by the drawee bank, all of which are ratified by the payee and the suit is then against the collecting bank as for moneys had and received.

In the instant action, the judgment in favor of the payee against the collecting bank constituted an adoption and ratification by the payee of the collection and payment of the check with a consequent release of the drawer and drawee bank.

HENRIOD, J., concurs in the dissenting opinion of CALLISTER, J.

1. Denver Elec. & Neon Serv. Corp. v. Gerald H. Phipps, Inc., 143 Colo. 530, 354 P.2d 618, 623 (1960).